■ GENERAL ACCIDENT INSURANCE COMPANY OF AMERICA,

Appellant, v THOMAS A. MANCHESTER et al., Respondents, et al., Defendant.—Main, J. P. Appeal from a judgment of the Supreme Court in favor of defendants Thomas A. Manchester and Cash Electric, Inc., entered February 6, 1985 in Chemung County, upon a verdict rendered at Trial Term (Swartwood, J.).

Defendant Cash Electric, Inc., owner of a building located in the City of Elmira, Chemung County, engaged the services of defendant Thomas A. Manchester, a general contractor, in connection with the repair of the building's leaking roof. After inspecting the roof, Manchester reported to Cash Electric his recommendation that the roof be replaced rather than repaired. Cash Electric then instructed Manchester to commence removing the entire existing roof while it sought to make arrangements regarding the installation of a new roof. Manchester ultimately executed this order, but only after he warned Cash Electric that, by removing the old roof in its entirety without immediately laying a new roof, it was exposing itself to the risk that a heavy rainfall occurring before the new roof could be installed would cause severe water damage to the building. According to Manchester, the customary method of replacing a roof calls for section-by-section removal and replacement of roofing materials.

On May 6, 1982, Cash Electric selected Manchester to replace the building's roof. By that time, Manchester already had removed a large portion of the old roof and placed over the exposed portions thereof sheets of plastic. On May 7 and 8, 1982, before Manchester had begun to construct the new roof, a rainstorm caused damage to the building's interior. Additional water damage was sustained on May 17, 1982 and thereafter, apparently, as the result of debris from the old roof having clogged certain water drains on the roof.

Plaintiff, Manchester's insurance carrier, commenced this action seeking a declaratory judgment to declare the rights of the parties with respect to the damage to Cash Electric's building. According to the terms of the general liability insurance policy issued by plaintiff to Manchester, plaintiff was obligated to pay "all sums which [Manchester] shall become legally obligated to pay as damages * * * caused by an occurrence". The term "occurrence" is defined as "an accident * * * which results in * * * property damage neither expected nor intended from the standpoint of [Manchester]". The trial court gave instructions on the terms "occurrence" and "accident" to the jury, which found that the damage to Cash Electric's building had resulted from the happening of an

"occurrence" within the meaning of the insurance policy. The judgment rendered thereafter ordered plaintiff to defend and indemnify Manchester upon the claims made against him by the other defendants. This appeal by plaintiff ensued.

Plaintiff's primary argument on this appeal is that the trial court erred in instructing the jury with respect to the meaning of the term "occurrence". The court's instruction, essentially, stated that a covered "occurrence" had taken place if Manchester had taken "a chance or risk" in leaving portions of the roof covered only by plastic after he had removed the old roofing materials and, conversely, that an "occurrence" had not taken place if Manchester had intentionally caused damage to Cash Electric's building or if he had expected that his actions would result in such damage. Plaintiff argues that the court should have charged the jury that an "occurrence" had not taken place if it was reasonably foreseeable that the water damage would have resulted from Manchester's actions. We find no fault with the jury instruction given by the trial court. This court has recently interpreted an insurance policy clause defining "occurrence" very similar to the definition in question in this case. In *Continental Ins. Co. v Colangione* (107 AD2d 978), we pointed out that "[o]rdinary negligence does not constitute an intention to cause damage * * * neither does a calculated risk amount to an expectation of damage * * * To deny coverage, then, the fact finder must find that the insured intended to cause damage" *(id.,* p 979 [citations omitted]; *see, McGroarty v Great Am. Ins. Co.,* 36 NY2d 358; *Ford Nursing Home Co. v Fireman's Ins. Co.,* 86 AD2d 736, *affd* 57 NY2d 656). Clearly, the trial court's charge correctly set forth for the jury these principles governing the definition of "occurrence".

Plaintiff's remaining arguments are likewise unavailing. Contrary to plaintiff's contention, the trial court properly instructed the jury that plaintiff had the burden of proof. If there is an issue of fact as to the meaning of language used in an insurance policy, the burden of proof is on the insurer to establish that the facts do not bring the event within the policy's coverage *(see, Sincoff v Liberty Mut. Fire Ins. Co.,* 11 NY2d 386, 390-391; *Mobil Oil Corp. v Reliance Ins. Co.,* 69 Misc 2d 876, 879, *affd* 39 AD2d 839), and the jury charge properly reflected the placement of this burden upon plaintiff. Finally, we reject plaintiff's argument that the jury's verdict was against the weight of the evidence. Although Manchester certainly may have been negligent to some degree in his actions, there is ample evidence in the record to support a

finding that he did not intentionally cause damage to Cash Electric's building *(see, Continental Ins. Co. v Colangione, supra,* p 979).

Judgment affirmed, with one bill of costs. Main, J. P., Mikoll, Yesawich, Jr., Levine and Harvey, JJ., concur.